IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| JOHN W. AILLS, | CV 21–95–GF–BMM–JTJ |
| Plaintiff, | |
| vs. | ORDER |
| PETER BLUDWORTH, et al., | |
| Defendants. | |

Plaintiff John Aills ("Aills") alleges civil rights violations under 42 U.S.C. § 1983, arising from the confiscation of his hobby materials. (Doc. 1.) Defendants Warden Peter Bludworth ("Bludworth"), Corrections Officer Danny York ("York"), Disciplinary Hearings Officer C. Baldwin, and Hobby Coordinator Rebecca Bennett (collectively "Defendants") have filed a motion for summary judgment on the basis that Aills did not properly exhaust his administrative remedies as required by the Prison Reform Litigation Act ("PLRA"). (Doc. 20.) The Court will deny Defendants' motion, finding that Aills sufficiently exhausted his administrative remedies.

## I.    Background

Aills is a State of Montana prisoner formerly incarcerated at Crossroads Correctional Center ("CCC"), operated by CoreCivic, Inc., in Shelby, Montana.

(Doc. 21 ¶ 1.) On February 3, 2021, Aills received a minor write-up from York for making and/or possessing a leather hat as part of his hobby materials. (Aff. Bludworth (Doc. 23 ¶ 12; Doc. 4-1 at 7.) ("Hobby" is used interchangeably by staff and prisoners to refer to the act of doing hobbies, to items produced as a result, and to materials used in the act.) Sergeant T. Lacy confiscated the hat on February 9, 2021. (Doc. 4-1 at 13.) At a disciplinary hearing on February 10, 2021, Aills was given a verbal warning about not possessing items he was not supposed to possess. The issue apparently was that items of clothing cannot be part of hobby, or that modifying hats was forbidden. (Various grievances filed by Aills show that the actual basis for confiscating the hat is unclear.)

On February 10 or 11, 2021, Aills's hobby items were taken to the designated recreation space, a location where inmates access and recreate with hobby crafts and materials they cannot keep in their cells. (Doc. 4-1 at 13.) Staff inventoried the hobby items there. (*Id.*) Aills contends that his property was improperly taken to the recreation area before it was inventoried; thus, materials were inventoried as belonging to him that he claims were not his property and that were later used to substantiate a major disciplinary infraction against him. (Doc. 4-1 at 3, 13; Doc. 1 at 6; Doc. 1-1 at 1.)

Aills submitted an Informal Grievance on February 11, 2021, seeking the return of his hat and other hobby items confiscated from him. (Doc. 21 ¶ 22.) On

the same day, York issued Aills a Major Disciplinary Infraction ("Major") and Notice of Hearing for possession of contraband, following the cell search. (Doc. 13-1 at 31.) Aills's hearing for this infraction was conducted on February 23, 2021. (Doc. 13-1 at 31.) Aills was found guilty of possession of contraband, mainly flammable dyes. (Doc. 21 ¶ 22; Doc. 23 ¶ 19.) Aills indicated his intention to appeal the Disciplinary Hearing Decision. (Doc. 4-1 at 25.)

On February 25, 2021, York denied Aills's initial Informal Grievance about his confiscated hat. (Doc. 21 ¶ 22; Doc. 4 at 23; Doc 23-2 at 8.) Aills followed with a Formal Grievance on March 1, 2021, appealing the Informal Grievance denial. (Doc. 21 ¶ 27.) Grievance Counselor C. Durham denied the Formal Grievance on March 26, 2021. (*Id.*) Thus ended Aills's use of the grievance procedure.

Aills used the proper disciplinary procedure to appeal his Major to the Warden, on March 15, 2021. (Doc. 29-1 at 1.) Bludworth affirmed the results of the hearing on April 20, 2021. (*Id.*) CCC lacked an appeal process for a disciplinary action after this step. Aills filed this action without pursuing any additional steps outlined in the grievance procedure.  (Doc. 23 ¶¶ 21–22; Doc. 21 ¶ 30.)

## II.   Analysis

Defendants move for summary judgment on the grounds that Aills failed to exhaust his administrative remedies. (Doc. 20.)

3

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Id*. The Court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in the non-moving party's favor when deciding a motion for summary judgment. *Id*. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020–21 (9th Cir. 2007).

### B. Failure to Exhaust

The parties dispute whether Aills properly exhausted his administrative

remedies.

### 1. Applicable Law

The PLRA contains the following exhaustion requirement:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524–25 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). An incarcerated person must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 93–97 (2006). Exhaustion is mandatory. *Booth*, 532 U.S. at 741; *Jones v. Bock*, 549 U.S. 199, 211 (2007). "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014).

A defendant bears the burden of showing that an administrative process was available to the incarcerated person and that the incarcerated person failed to exhaust it. *Fordley v. Lizarraga*, 18 F.4th 344, 350–51 (9th Cir. 2021); *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows both that (1) an available administrative remedy existed and that (2) the incarcerated person failed to exhaust that remedy, then the burden of production shifts to the plaintiff to

bring forth evidence "showing that there is something in [their] particular case that made the existing and generally available administrative remedies effectively unavailable to [them]." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). The prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

"The ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (citing *Booth*, 532 U.S., at 737–38.) Incarcerated people must exhaust those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 578 U.S. at 642 (quoting *Booth*, 532 U.S. at 738).

Three general situations can render a prison or jail grievance process unavailable to an incarcerated person. First, an administrative procedure is not available, and therefore need not be exhausted, when the procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643. Second, an administrative procedure "might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary

prisoner can discern or navigate it." *Id.* at 643–44. "When rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id.* at 644 (internal quotation marks and alteration omitted). The procedures need not be sufficiently "plain," however, as to preclude any reasonable mistake or debate with respect to their meaning. *Id.* Congress has determined that an incarcerated person should err on the side of exhaustion when an administrative process proves susceptible of multiple reasonable interpretations. *Id.*

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart incarcerated people from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an incarcerated person's pursuit of relief. *Id.* at 644.

Prison regulations define the exhaustion requirements under the PLRA. *Jones*, 549 U.S. at 218. As part of its contract with the Montana Department of Corrections ("DOC"), CoreCivic must adopt and adhere to certain DOC policies and procedures, including DOC's grievance policy and MSP's grievance procedure. With the exception of emergency grievances, the Inmate Grievance Program involves four steps: (1) informal resolution, (2) Formal Grievance, (3) appeal to the Warden, and (4) appeal to the Director of the DOC. MSP Operating Procedures ("MSP OP) 3.3.3(III)(E), (III)(F), (III)(I), (III)(K); (Doc. 40-1.)

Timelines exist for properly submitting grievances. MSP OP 3.3.3(III)(D). "If an inmate fails to advance to the next level of the grievance program within the stated time limit, he will be considered to have forfeited the opportunity to exhaust his administrative remedies under the inmate grievance program." MSP OP 3.3.3(III)(D)(5).

Aills began the grievance procedure by submitting an Informal Grievance on February 11, 2021. (Doc. 23 ¶ 18; Doc 23-2 at 8.) In it, he grieved the loss of his hat, the confiscation of his other property without proper inventory, and the lack of clear policy about why the hat was confiscated. (Doc. 23-2 at 8.) Aills received a response from York on February 25, 2021. (Doc. 23 ¶ 18; Doc 23-2 at 8.) Aills submitted a Formal Grievance on March 1, 2021. The Formal Grievance addresses substantially the same issues regarding confiscation of Aills's property and related procedures. (Doc. 21 at 6.) The Formal Grievance was denied by C. Durham on March 26, 2021. (*Id.*) The denial was not delivered to Aills until April 19, 2021, 36 working days after the submission, so Aills could have moved on to the next step, appeal to the Warden. (Doc. 23 ¶¶ 5, 13.)

Despite not completing steps three and four of the inmate grievance process, Aills filed this action. (Doc. 21 ¶¶ 30–31.) Because he failed to complete steps three and four—appeal to Warden and appeal to Director—Aills did not exhaust his administrative remedies in the grievance process. (Doc. 23 at ¶¶ 21–25.)

Aills states in his complaint that he pursued the grievance procedure, but his actions were unnecessary because a "hearing decision can't be grieved." (Doc. 1 at 12.) This is also the substance of Aills's response to Defendants' motion for summary judgment, for which he supplies the Warden's response to his appeal for the disciplinary action, and the response to his Formal Grievance. (Doc. 29-1.) Aills also claims he filed suit because he had not received a response to his grievance as of August 26, 2021. (Doc. 1 at 12.) This second argument proves unavailing. As stated above, an incarcerated person who does not receive a timely response to a Formal Grievance still may proceed to the appeal to the Warden. (Doc. 23 ¶ 13.)

Aills's first response, however, forms the crux of this dispute. Aills construes the disciplinary proceeding and the grievance procedure as parts of the same process. The gist of Aills's minimal response to the motion appears to reflect Aills's belief that the disciplinary appeal he made to the Bludworth was sufficient to conclude the grievance process before filing this action. (Doc. 29; Doc. 29-1.)

Disciplinary decisions are subject to a separate appeal procedure and are not grievable under the facility's grievance program. (Doc. 23-1 at 2; § III(A)(2).) The Ninth Circuit in *Fuqua v. Ryan* concluded that a plaintiff was not required to exhaust administrative remedies under the grievance process. The Ninth Circuit reasoned that the plaintiff had exhausted the disciplinary process and the issues

9

relevant to the grievance and his complaint were within the scope of the disciplinary action. 890 F.3d 838 (9th Cir. 2021). The question here, then, is whether the issues appealed by Aills following his disciplinary hearing involved the same issues that he is litigating here, thereby giving MSP and DOC a full opportunity to remedy the issue before suit was filed.

Here, Aills's grievance was based on the confiscation of his property and the proper confiscation and grievance procedures. (Doc. 29-1.) Aills's disciplinary appeal also cites a failure of staff adhering to proper protocol, resulting in the unjust confiscation of his property. (*Id.* at 1.) Under *Fuqua*, he need not pursue exhaustion through both the disciplinary appeals and grievance process, for one is sufficient when an issue is substantially intertwined between both processes. *See Fuqua*, 890 F.3d at 849–50. The substantive issue for both Aills's disciplinary action and his grievances is the same. If an appeal to Bludworth represented the final step in the disciplinary appeal process, Aills exhausted this administrative remedy. Further exhaustion of the grievance procedure regarding the confiscation of his materials would be pointless.

## III.   Conclusion

Aills sufficiently exhausted his administrative procedure before filing this action. The Court will deny Defendants' Motion for Summary Judgment. (Doc. 25.)

**ORDER**

Accordingly, it is **HEREBY ORDERED** that:

1.      Defendants' Motion for Summary Judgment is **DENIED**. (Doc. 25.)

DATED this 14th day of April, 2023.


_____
Brian Morris, Chief District Judge
United States District Court